(C. D. 233)

J. D. RICHARDSON Co. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 14, 1939)

*Barnes, Richardson & Colburn* (*Albert McC. Barnes* and *Samuel M. Richardson* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before Evans, Brown, and McClelland, Judges

McClelland, Presiding Judge: These protests, which were consolidated when called for trial, are directed against the assessment of duty by the collector of customs at the port of Detroit on merchandise described on the invoice as "quarter panels," "roof and top panels," etc., at the rate of 33⅓ per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930 for manufactures of wood, not specially provided for. The protest claim is for free entry thereof under the provisions in paragraph 1720 of the same act which reads as follows:

PAR. 1720. Models of inventions and of other improvements in the arts, to be used exclusively as models and incapable of any other use.

There is no dispute as to the facts. The merchandise was made in England by Briggs Motor Bodies, Ltd., and consists of panels or sections made of wood to the exact exterior shape of various parts of an automobile body, such as cowl, fenders, top, etc. The imported merchandise is produced in the following manner: Men trained in the art of designing automobiles sketch designs for automobile bodies to be made in the future. These designs are given to engineers who reduce them to engineering drawings. From these drawings so-called panels such as those at bar are produced in full size, mostly in mahogany, under the direction and with the collaboration of the engineers who made the drawings, and represent, when completed, the exterior shape of the part of the automobile body to be finally produced. After importation a blueprint is made from wooden sections such as those in issue. A pattern is then made for use in a mold and a casting is made from the pattern. The casting is placed in a machine known as a Keller machine and one of the original sections here in issue is placed in another part of the same machine. An automatic arm that passes over the wooden section guides a grinding apparatus in the machine which shapes the surface of the casting so that in every respect it conforms to the surface of the wooden section. The casting is finally finished by hand in order to grind off imperfections and is, thereafter, used as a die from which parts of automobile bodies may be stamped out on sheet metal.

In Funk and Wagnalls New Standard Dictionary, the following definition is given of the word "model"—

An object, usually in miniature, representing accurately something to be made or already existing; *a material pattern of natural size* * * *. [Italics ours.]

and the word "pattern" is defined as—

1. An original or model proposed for imitation; * * * 2. Anything shaped or formed to serve as a model or guide in forming something else. * * *

Obviously the merchandise at bar falls squarely within the common meaning of the word "model."

We are, therefore, satisfied that the merchandise at bar consists of models from which parts of automobile bodies are ultimately to be made and we are likewise satisfied from the evidence that they are models of improvements in the industrial arts, i. e., the building of automobile bodies of advanced design, and that they have and are capable of no other use.

The protest claim for free entry under paragraph 1720 of the Tariff Act of 1930 is therefore sustained, and the decision of the collector is reversed. Judgment will issue accordingly.